DECISION
Before this Court is the application of Carlos Gomez ("Gomez" or "petitioner") for post-conviction relief. Gomez contends that the Superior Court, which received his plea to a criminal offense, did not have jurisdiction of him as he was seventeen years old at the time, and, therefore, under the exclusive jurisdiction of the Family Court. The petitioner now seeks post-conviction relief pursuant to G.L. 1956 §10-9.1-1.[1] The State of Rhode Island ("State") objects to the petitioner's application.
 I Facts and Travel
Gomez was born in the Dominican Republic on or about January 8, 1976. He has been a lawful permanent resident of this country since October 11, 1988. He is currently a resident of the State of Florida. The petitioner avers that he is married and has four children. (Mem. of Law in Supp. of Pet. for Post Conviction Relief 3 [hereinafter Petitioner's Mem. of Law].)
On or about February 12, 1993, Gomez was arrested during the execution of a search warrant by the Pawtucket Police Department. At the time he possessed a false identification card with the name "Yudelfi Ruiz" and a date of birth of January 8, 1975. *Page 2 
(Petitioner's Mem. of Law 2.) The petitioner claims, "I tried to explain to the officers who arrested me that was not my real name but they didn't listen to me and instead charged me under the name Yudelfi Ruiz alias Carlos Santos. I have no idea where the name Carlos Santos came from. . . ." (Aff. of Carlos Gomez ¶ 3-4.)
On or about October 8, 1993 Gomez appeared before a justice of the Superior Court and entered a plea of nolo contendere to possession of a controlled substance, a violation of § 21-28-4.01(C)(1)(a) (1994 Pocket Supp.). No other charges were prosecuted with regard to this incident. Gomez received a two year suspended sentence with two years probation. He was never brought before a justice of the Family Court. At some date since his plea the federal government instituted removal proceedings against Gomez.[2]
The petitioner contends that this Court must vacate his plea because the Superior Court did not have jurisdiction to receive his plea in 1993. Gomez claims that he was seventeen years old at the time he entered his plea. Consequently, he argues, the Family Court had exclusive jurisdiction over him at the time. (Petitioner's Mem. of Law 3-4.)
In contrast, the State argues that the relevant question is "Which court would have jurisdiction now?" (Supplemental Mem. in Supp. of State's Mot. to Dismiss 5 [hereinafter State's Mem. of Law].) The State claims that, if retried, Gomez's prosecution would occur in the Superior Court. In support of this contention, the State identifies the statutory provision that requires that the Family Court refer a person alleged to have committed an offense prior to the age of nineteen that would be a felony if committed by an adult to the Superior Court if the Family Court did not acquire *Page 3 
jurisdiction of the person prior to the age of nineteen. G.L. 1956 § 14-1-6(c).[3] The State also argues that the defense of laches prohibits the Court from granting the petitioner's application. (State's Mem. of Law 3-5.)
 II Standard
Rhode Island's post-conviction relief statute allows claims that a "conviction . . . was in violation of the constitution of the United States or the constitution or laws of this state" to be brought to correct the alleged violative action. Section 10-9.1-1(a)(1). The petitioner must prove, by a preponderance of the evidence, that the requested relief is warranted. Thornton v. State, 06-221-A., slip op. at 6 n. 4 (R.I., filed June 13, 2008).
 III Personal Jurisdiction
A claim that a court lacked personal jurisdiction of an accused is properly considered under § 10-9.1-1(a)(1) because such a claim is derived from the guarantee of procedural due process enshrined in theFourteenth Amendment of the United States Constitution and Article 1, Section 2 of the Rhode Island Constitution. See In re Stephanie B.,826 A.2d 985, 993 (R.I. 2003) ("A fundamental principle of procedural due process is that a court may not issue a judgment or order against a person in the absence of personal jurisdiction.").
The Rhode Island Family Court is a court of limited jurisdiction whose powers are strictly limited to those granted to it by legislative enactment. State v. Kenney, 523 A.2d 853, 854 (R.I. 1987) (cited inState v. Day, 911 A.2d 1042, 1049 (R.I. 2006)). The *Page 4 
legislature granted the Family Court "exclusive original jurisdiction" of any "child" residing or being within the State of Rhode Island. G.L. § 14-1-5 (1981 Reenactment), amended by P.L. 1994, ch. 178, § 1. "The term `child' shall mean a person under eighteen (18) years of age." Section 14-1-3(C) (1981 Reenactment), amended by P.L. 1984, ch. 216, § 1. The purpose of the Family Court is to "serve the child's welfare and the best interests of the state." G.L. § 14-1-2 (1981 Reenactment),amended by P.L. 1994, ch. 134, § 1.
The United States Supreme Court and the Rhode Island Supreme Court have clearly indicated the process that this Court must utilize in considering the petitioner's contention. In Kent v. United States, the petitioner, sixteen years old at the time of his arrest, claimed that he was within the exclusive jurisdiction of the Juvenile Court for the District of Columbia. 383 U.S. 541, 543 (1966). The petitioner argued that the Juvenile Court failed to follow the statutorily imposed waiver hearing procedure. Id. The Supreme Court agreed, "conclud[ing] that, as a condition to a valid waiver order, petitioner [w]as entitled to a hearing. . . ." Id. at 557. The Kent Court remanded the case to the United States District Court for a de novo waiver hearing. Id. at 565. If the District Court found that waiver was not appropriate, then the petitioner's conviction was to be vacated. Id. However, if the District Court found that waiver was proper, then the District Court was authorized to proceed to enter an appropriate judgment. Id.
Two decisions of the Rhode Island Supreme Court apply theKent procedure to courts in this state. In State v. Mastracchio, the Rhode Island Supreme Court explained the process for considering a claim that the Superior Court lacked jurisdiction of a criminal defendant.546 A.2d 165, 167 (R.I. 1988) (Mastracchio I). In that case, the *Page 5 
defendant claimed that he was seventeen years old at the time that he allegedly committed the offense; therefore, he was subject only to the jurisdiction of the Family Court. Id. The Supreme Court accepted that the defendant fell within the Family Court's jurisdictional age range, but relied upon the Family Court's statutory authority to waive jurisdiction of juveniles between the ages of sixteen and twenty-one to the Superior Court. Id. at 169. The Court held that the Family Court, not the Superior Court, had personal jurisdiction over the defendant unless and until a justice of the Family Court waived that court's exclusive jurisdiction. Id. at 170. Therefore, the Supreme Court remanded the case to the Superior Court to conduct a de novo waiver hearing to determine whether the Family Court would have waived jurisdiction initially. Id.
Similarly, in Knott v. Langlois, the Rhode Island Supreme Court agreed with a convicted petitioner's contention that the Family Court did not conduct a "full investigation" of the petitioner's personal circumstances prior to waiving jurisdiction, as was required by the applicable waiver statute at the time. 102 R.I. 517, 231 A.2d 767, 768
(1967). The Supreme Court vacated the Family Court's waiver order and remanded the case to the Superior Court for a de novo waiver hearing.Id. at 773. The Knott Court instructed: "If the superior court . . . finds that the waiver was inappropriate in the circumstances, then petitioner's conviction must be vacated. If, however, it should determine that the waiver order was proper when originally made, it `. . . may proceed . . . to enter an appropriate judgment.'"Id. (second emphasis in original) (citing Kent, 383 U.S. at 565). *Page 6 
At the time of the petitioner's arrest and plea, the Family Court was authorized to waive its jurisdiction of certain children who fell within the statutorily prescribed age range. The Family Court's waiver statute provided as follows:
 "Any child sixteen (16) years of age or older who is charged with an offense which would constitute a felony if committed by an adult shall, upon motion of the attorney general, be brought before the court and the court shall conduct a waiver hearing as provided for by § 14-1-7.1." G.L. 1956 § 14-1-7 (1994 Reenactment).
At the waiver hearing, the State must show, by a preponderance of the evidence, that probable cause exists to believe that the offense was committed by the specified child; and "[t]hat the child's past history of offenses, history of treatment, or the heinous or premeditated nature of the offense is such that the court finds that the interests of society or the protection of the public necessitate the waiver of jurisdiction. . . ." Section 14-1-7.1(a) — (b).
In light of these statutory provisions, the Court must perform a three-part analysis. First, the Court must determine whether the petitioner fell within the statutory age limit. If so, the Court must then determine whether the offense with which he was charged constituted a felony. If the offense did constitute a felony, the Court must then determine whether the Family Court would have waived its jurisdiction over the petitioner.
First, there is no question that the petitioner was seventeen years of age on the date he entered his plea. The petitioner has provided the Court with one document issued by the federal government — a copy of his permanent resident card — and two documents issued by the State of Florida — his motor vehicle driver's license and a marriage certificate. Each of these documents indicates that the petitioner's date of birth is January *Page 7 
8, 1976. The State does not contest the authenticity or accuracy of these documents. Consequently, the Court is satisfied that the petitioner fell within the Family Court's statutory age limit.
Second, Gomez's plea to one count of possession of a controlled substance in violation of § 21-28-4.01(C)(1)(a) was a felony. G.L. § 11-1-2 defines a felony as any crime punishable by imprisonment of more than one year or by a fine of more than $1,000. At the time of Gomez's plea, a violation of § 21-28-4.01(C)(1)(a) was punishable by imprisonment for not more than three years or a fine of not less than $500 but not more than $5,000, or both.
The remaining jurisdictional question concerns the Family Court's authority to waive certain children to the Superior Court. Pursuant toKent and its progeny in the federal courts as well as in Rhode Island, this Court must provide the petitioner with a de novo waiver hearing.[4] In doing so, the Court must apply the waiver hearing procedure that was in effect in 1993. At the time, § 14-1-7.1 required the State to show, by a preponderance of the evidence, that probable cause existed to believe that the offense was committed by the specified child; and "[t]hat the child's past history of offenses, history of treatment, or the heinous or premeditated nature of the offense is such that the court finds that the interests of society or the protection of the public necessitate the waiver of jurisdiction. . . ." The Rhode Island Supreme Court, in a case involving the application of § 14-1-7.1, explicitly identified "the factors that the waiver justice should consider in reaching a decision to waive. They are (1) the seriousness of the offense, (2) the prosecutive merit of the case, (3) the defendant's record, (4) the safety concerns for the *Page 8 
community, and (5) the potential for rehabilitation." State v.Mastracchio, 605 A.2d 489, 490 (R.I. 1992) (Mastracchio II).
The Court must examine the record to reach a determination regarding waiver. Because the Court is able to reach a determination on the factors pertaining to Gomez's history and the nature of the offense, it does not reach the issue of whether probable cause existed that Gomez committed the offenses with which he was charged or to which he pled. Rather, in looking at Gomez's history of offenses prior to date on which he pled, his potential for rehabilitation, and the nature of the offense, the Court finds that the petitioner would not have been waived to Superior Court. First, the Criminal History Record provided to the Court by the State indicates the Gomez did not have any criminal record prior to the incident that led to this plea. Second, there was nothing in Gomez's history that would lead the Family Court to doubt his potential for rehabilitation.
In considering the third factor — the nature of the offense — the Court is guided by decisions of the Rhode Island Supreme Court addressing Family Court waiver. In In re Frances J. a seventeen-year-old was alleged to have stabbed a woman who later died from the wounds inflicted by the alleged assailant. 456 A.2d 1174, 1174 (R.I. 1983). The juvenile was adjudicated in Family Court. Id. The Supreme Court noted that this "act . . . would have constituted murder if it had been committed by an adult." Id. Though the retention of jurisdiction by the Family Court was not challenged, the Supreme Court, in a footnote, "suggest[ed] that in cases involving juveniles who have almost reached their eighteenth birthdays and when they are charged with a serious offense of the type involved in the case at bar, the Family Court should seriously consider waiver of jurisdiction. . . ." Id. at 1175 n. 1. In another case in which a juvenile was *Page 9 
charged with murder the defendant appealed the Superior Court's determination, on remand, that the Family Court would have waived jurisdiction of the defendant even though he was seventeen years old at the time he allegedly murdered a thirteen-year-old boy who had previously suffered a personality-altering head injury. MastracchioII, 605 A.2d at 490. The Supreme Court found that the evidence pertaining to "the nature of the offense and the criminal method employed . . . was of such a nature that it made the case one that should be seriously considered for waiver." Id. at 493. Therefore, the Supreme Court affirmed the Superior Court's determination that waiver was appropriate. Id.
These two cases — In re Frances J. and Mastracchio II — involved juveniles charged with serious crimes of violence. Both of these defendants were accused of inflicting the most brutal of injuries — death by physical violence — upon another person. In stark contrast, the offense to which Gomez pled, possession of an illegal drug, has been described by the United States Supreme Court as a "victimless crime."Bowers v. Hardwick, 478 U.S. 186, 195 (1986) ("Victimless crimes, such as the possession and use of illegal drugs, do not escape the law where they are committed at home.").
The Court also is informed by the legislative history of the Family Court's waiver statute regarding drug-related offenses. Section 14-1-7.4
requires the Family Court to waive jurisdiction of a child sixteen years of age or older who has been found delinquent of certain specified drug-related offenses and is now charged with another specified drug-related offense.[5] Though the statute's list of specified drug-related offenses is *Page 10 
extensive, it notably does not include possession of a controlled substance, the offense to which Gomez pled nolo contendere. The offense included in the waiver statute that most resembles possession of a controlled substance is possession with intent to manufacture or deliver. The addition of intent to manufacture or deliver to the crime of possession of a controlled substance significantly amplified the severity of the offense in the eyes of the legislature as measured by the resultant penalty. While possession of a controlled substance other than marijuana carried a maximum penalty of three years imprisonment, a fine of between $500 and $5,000, or both, possession with intent to manufacture or deliver a controlled substance other than marijuana carried the much more severe maximum penalty of life imprisonment, a fine of between $10,000 and $500,000, or both. Section 21-28-4.01(A)(1), (C)(1)(a).
In light of the Rhode Island Supreme Court's instructions and the legislature's exclusion of the offense to which Gomez pled from the mandatory drug-related offense waiver statute, this Court finds that Gomez's offense would not have merited waiver to the Superior Court had he received a hearing before the Family Court at the time of his arrest. Therefore, the Superior Court's acceptance of Gomez's plea was effectuated without jurisdiction over Gomez. Consequently, the judgment entered against Gomez in the Superior Court violated the "fundamental principle of procedural due process . . . that a court may not issue a judgment or order against a person in the absence of personal jurisdiction." In re Stephanie B., 826 A.2d at 993. Accordingly, that judgment is vacated. *Page 11 
 IV Family Court Retention Statute
The State urges the Court to dismiss the petitioner's application based on its contention that § 14-1-6(c) requires that the Family Court refer to the Superior Court any person alleged to have committed an offense prior to reaching nineteen years of age if the Family Court did not acquire jurisdiction of that person prior to the person turning nineteen years-old. (State's Mem. of Law 5-6.) The Court takes notice that § 14-1-6(c) actually governs offenses allegedly committed "prior to the person attaining the age of eighteen" not nineteen as the State claims. P.L. 2007, ch. 532, § 1 (codified as § 14-1-6(c)) (emphasis added). In addition, the Court is cognizant that the retention statute in effect at the time of the petitioner's arrest and plea specifically provided for the treatment of individuals over whom the Family Court had not acquired jurisdiction prior to their twenty-first birthday and whom allegedly committed an offense prior to their eighteenth birthday. Section 14-1-6(c) (1994 Reenactment).
In spite of the State's inartful drafting of this contention, the Court nonetheless considers the State's claim that the retention statute is controlling because "[e]ven if the State were able to re-charge and prosecute the defendant with the same crime, he would no longer fall under the jurisdiction of the Family Court and would ultimately be charged in Superior Court." (State's Mem. of Law 5.) This argument is unavailing.
"It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226
(R.I. 1996) (quoted in State v. Briggs, 934 A.2d 811, 814 (R.I. 2007)). *Page 12 
The retention statute clearly requires that the accused "person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult." Section 14-1-6(c) (1994 Reenactment). That is, the Family Court must automatically waive jurisdiction and refer the accused person to the Superior Court if the specified criteria are satisfied — namely, if the Family Court had not acquired jurisdiction of the accused prior to that person reaching the age of twenty-one and that person was accused of committing an offense prior to reaching the age of eighteen that would have constituted a felony if committed by an adult. Id.
In the petitioner's situation, however, the Family Court's jurisdiction was never invoked after his arrest in February 1993. It follows that the Family Court could not "refer" the petitioner to the Superior Court pursuant to § 14-1-6(c) if it never invoked its exclusive jurisdiction in the first instance. As the Rhode Island Supreme Court explained, "in the absence of a waiver from the Family Court, the Superior Court lacks personal jurisdiction to adjudicate allegations of criminal conduct with respect to children; that is the exclusive province of the Family Court." Day, 911 A.2d at 1049. It would defy reason to find that the strict "jurisdictional division" that separates the Family Court from the Superior Court could be eliminated by an unconstitutional exercise of the Superior Court's authority to adjudicate allegations of criminal conduct. Id. Accordingly, the Court finds that the State's contention that the Family Court referral statute would now give the Superior Court jurisdiction over the petitioner is misplaced. *Page 13 
 V Defense of Laches
The State also claims that the defense of laches bars the petitioner's application for post-conviction relief. (State's Mem. of Law 3-5.) InRaso v. Wall, the Rhode Island Supreme Court announced that the "venerable defense of laches may, in appropriate circumstances, be properly invoked by the state as an affirmative defense to an applicant's application for postconviction relief." 884 A.2d 391, 394
(R.I. 2005). Nonetheless, this Court is guided by its determination that "we are dealing with a judgment which is void because of a lack of jurisdiction over the parties." Reynaud v. Koszela, 473 A.2d 281, 284
(R.I. 1984). "Laches cannot run against a void judgment which is nothing more than a mere piece of paper — a cloud on the record." Lamarche v.Lamarche, 115 R.I. 472, 348 A.2d 22, 23 (1975). In Lamarche, the Supreme Court refused to enforce an order of the Family Court because the Family Court did not have jurisdiction over one of the parties. Id. ("The Family Court had no jurisdiction over the wife when it entered the suspension order and as a consequence the order is void.").
For an enforceable judgment to be entered the corresponding court must have jurisdiction of the subject matter and the parties whose rights are involved. Id. The parties have not contested the Superior Court's jurisdiction over the criminal offense to which the petitioner pled; they only contest the Superior Court's jurisdiction over the petitioner. A claim that a court lacked jurisdiction over a party may be brought at any time. Reynaud, 473 A.2d at 285. "It matters not how, or in what way, or at what time the objection to its presence is brought to the court's attention." Id. (quoting Lamarche, 348 A.2d at 23). A "claim of laches cannot give efficacy to a judgment that has no efficacy."Reynaud, 473 A.2d at 285. *Page 14 
Since the Court has determined that the Superior Court did not have jurisdiction over Gomez when he entered his nolo contendere plea, it is this Court's duty to remove this judgment from his record.Lamarche, 348 A.2d at 23. The State's invocation of the laches defense is therefore inapposite.
 Conclusion
After reviewing the record, the Court finds that the petitioner'snolo contendere plea was entered in violation of the due process protections of the constitutions of the United States and the State of Rhode Island. Accordingly, the petitioner's application for post-conviction relief is granted. Counsel shall submit an appropriate order for entry.
[1] As the plea hearing justice has retired from the Rhode Island Superior Court, this Court considers the matter pursuant to Rhode Island Superior Court Rules of Practice 2.3(d)(4).
[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) merged the proceedings for exclusion and deportation of non-citizens into a single form of removal proceedings. David Weissbrodt, Immigration Law and Procedure in a Nutshell § 8-1 (4th ed. 1998).
[3] The Court takes notice that § 14-1-6(c) actually governs offenses allegedly committed prior to the person's eighteenth birthday.
[4] The parties have denied a hearing and requested that the Court reach a determination on the record.
[5] The full text of the statute as initially enacted and in effect at the time of Gomez's plea reads as follows:
 "A child sixteen (16) years of age or older who has been found delinquent of having committed one (1) felony offense after the age of sixteen (16) involving the unlawful sale, distribution, manufacture, delivery or possession with intent to manufacture, sell, distribute or deliver any controlled substance listed in schedule I or II as set forth in section 21-28-2.08 shall be either certified pursuant to section 14-1-7.2 or waived pursuant to section 14-1-7.1 for all subsequent felony offenses involving the unlawful sale, distribution, manufacture, delivery or possession with intent to manufacture, sell, distribute or deliver any of said controlled substances." P.L. 1990, ch. 275, § 3 (codified as G.L. § 14-1-7.4).