DECISION
The Plaintiff, Industrial Park Water Co. ("plaintiff" or "Industrial"), moves this Court to reconsider its February 9, 2005 Decision, regarding the Defendant's, CNA Insurance Company's ("defendant" or "CNA"),[1] obligations under the parties' insurance contract. Jurisdiction is pursuant to Super. R. Civ. P. 60(b).
 Facts and Travel
The Court detailed the facts of the case at issue in its underlying decision; therefore, this Court will summarize and recite only those facts relevant to the plaintiff's current motion. Industrial is a Rhode Island Corporation in the business of supplying water to an industrial park in Slatersville, Rhode Island. CNA is a foreign insurer with which the plaintiff purchased two insurance policies — a Commercial General Liability ("CGL") policy and a Commercial Property Coverage policy. Both policies were in effect at the time in question.
On April 1, 1997, one of Industrial's water pipes burst causing approximately one million gallons of water to escape. As a result, the adjacent road was severely flooded, and sand was washed into a nearby wetland area. The agreed stipulation of facts submitted by the parties stated: "[i]t was surmised but never established that the electrical lines fell onto the street, burned through the pavement, and ultimately caused the water main to burst." Furthermore, an insurer's field investigator noted, on April 18, 1997, that she met with Mr. Kerns, plaintiff's representative, who believed that the following sequence of events took place:
 "Mother nature left a 2' snowstorm. A tree and/or branch fell on the power line, which snapped. The voltage caused heat to melt the asphalt. Electricity arched into the water line, causing sand to form `glass.' The burned piece of water line exploded or blew apart. Water for the industrial park drained, washing out the road."
Following the incident, the plaintiff incurred a number of costs to repair the affected area: it hired contractors to fix the pipe; it paid the Town of Smithfield — per the town's request — for the damage caused to the road; it reimbursed the North Smithfield Fire Department for the emergency water pumping that was performed; and it retained an engineering firm to develop a plan to remediate the damaged wetlands pursuant to the Department of Environmental Management's ("DEM") request.[2]
On April 4, 1997, Industrial informed CNA of the incident. The plaintiff had not obtained CNA's approval prior to retaining any contractors or paying any bills associated with the flood. Subsequently, following an investigation, CNA denied the plaintiff's claim for reimbursement. The insurer maintained that it was not liable under its policies with Industrial because the incident was caused by an "Act of God," Industrial was never legally obligated to pay for the loss, and Industrial violated the voluntary payment provision of the policy.
The plaintiff filed a complaint with the Superior Court on August 24, 1998, alleging that the defendant wrongfully denied the claim under the CGL policy, willfully breached its obligation to the plaintiff, and engaged in bad faith settlement practices. CNA denied the allegations and brought a counterclaim, pursuant to G.L. 1956 § 9-30-1, seeking a declaratory judgment in its favor. The defendant maintained that Industrial was not covered for the loss under the CGL policy because, among other reasons, it "voluntarily made payments, assumed obligations and incurred expenses, without CNA's consent." (Def.'s Answer filed Sept. 23, 1998 at 4.)
Eventually, after years of discovery, various motions, and miscellaneous delays, in November 2004, the parties submitted an agreed stipulation of facts and memoranda of law presenting their respective positions. On February 9, 2005, the Court issued a written decision. The Court determined that the plaintiff was not covered for any loss under the Commercial Property Coverage policy because the incident did not involve any "covered property" as defined by the policy. Alternatively, under the CGL policy, this Court found CNA liable for the cost of the remediation of the wetland.
The CGL policy stated that CNA would "pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which [the] insurance applies." Furthermore, the policy set forth that the defendant would "have the right and duty to defend any `suit' seeking those damages." This Court found that the policy was ambiguous as to the definition of "legally obligated to pay" and, ultimately, refused to read into the policy a requirement that a judgment be entered before a "legal obligation" arises. It was determined that Industrial was strictly liable for the damage to the wetland and, therefore, CNA had a legal obligation to pay for the remediation of the wetland. With regard to the other costs for which the plaintiff sought reimbursement, this Court found that Industrial had no legal obligation to pay because the incident was the consequence of an "Act of God." As a result, the plaintiff could not be liable under either a public nuisance or negligence theory.
On January 30, 2006, Industrial filed a motion requesting that this Court reconsider its February 9, 2005 Decision. Industrial suggests that the defendant failed to meet its burden in proving that the incident was the result of an Act of God. In addition, the plaintiff asserts that the Court erred by finding that a public nuisance theory is not applicable to the case at hand. Industrial notes that it has not yet received any payment from CNA for the remediation of the wetlands and requests that this Court order such payment to be made promptly. Furthermore, the plaintiff argues that prejudgment interest should be added to the Court's award of remediation costs.
In opposition, CNA maintains that it presented sufficient evidence to show that the rupture of the water pipe was caused by an Act of God. The defendant claims that the Court was correct in finding that Industrial was not legally obligated to pay any claims other than for the remediation of the wetland and that, even if it were, it would first have the right and duty to defend the suit pursuant to the terms of the policy. Finally, CNA asserts that it should not have to pay the plaintiff for the remediation of the wetlands because the plaintiff has not incurred any expenses and there is no indication that Industrial is being held, or will be held, legally responsible to perform said work.
The Court heard argument on the plaintiff's motion on February 27, 2006.
 Standard of Review
The Rhode Island Rules of Civil Procedure — like the Federal Rules of Civil Procedure — do not provide for a motion to reconsider. Keystone Elevator Co. v. Johnson Wales Univ.,850 A.2d 912, 916 (R.I. 2004). However, our Supreme Court generally construes the rules of civil procedure liberally and "looks to substance, not labels." Id. (citing Sarni v. Meloccaro,113 R.I. 630, 636, 324 A.2d 648, 651-52 (1974)). Consequently, this Court finds it appropriate to treat the plaintiff's motion as a motion to vacate under Super. R. Civ. P. 60(b). See Id.
 Plaintiff's Motion to Vacate
The decision of whether to grant a motion to vacate is "left to the sound discretion of the motion justice." Pleasant Mgmt., LLCv. Carrasco, 870 A.2d 443, 445 (R.I. 2005). "It is the burden of the moving party to convince the trial justice that legally sufficient grounds exist to warrant the vacation of judgment under Rule 60(b)." McBurney v. Roszkowski, 875 A.2d 428, 439
(R.I. 2005) (citing DeFusco v. Giorgio, 440 A.2d 727, 730 (R.I. 1982)).
Under Rule 60(b), a motion to vacate must be brought within a reasonable time and not more than one year after the judgment when the moving party is claiming either (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; or (3) fraud. Flynn v. Al-Amir,811 A.2d 1146, 1150 (R.I. 2002). When the moving party is asserting any of the other grounds for a Rule 60(b) motion to vacate — judgment is void; the judgment has been satisfied, released, or discharged; or any other reason justifying relief from the operation of the judgment — the motion is not subject to the one-year filing deadline. Id. In the instant matter, the motion was filed within the one-year period and, therefore, is timely.
In the case at hand, because the plaintiff fashioned its motion as a "motion for reconsideration," the Court is left to determine the grounds under which the plaintiff's arguments fall within the purview of Rule 60(b). Industrial suggests that the Court erred by (1) determining that the flood was caused by an "Act of God," given the defendant's failure to present evidence sufficient to meet its burden of proof on the issue, (2) allowing CNA to continually change its legal theories regarding its liability under the CGL policy, (3) misconstruing the Act of God doctrine, and (4) creating a remedy that encourages insurance companies to deny valid claims. In summary, the plaintiff maintains that the Court committed multiple errors of law in rendering it previous decision and mandated an inequitable remedy. Under Rule 60(b), Industrial's arguments — essentially, that the Court committed multiple errors of law and issued an unjust remedy — can only conceivably fall into three of the categories warranting the filing of a motion to vacate: either mistake, that the judgment is void, or "any other reason justifying relief from the operation of the judgment."
With respect to Rule 60(b)(1), our Supreme Court has unequivocally stated that "a mistake of law is not the kind of `mistake' that is included within the coverage of that term as it is used in Rule 60(b)(1)." Jackson v. Medical Coaches,734 A.2d 502, 507 (R.I. 1999) (citing and quoting 1 Kent, R.I. Civ.Prac. § 60.3 at 452 (1969) ("Judicial error of the trial judge, as contrasted with mechanical error, cannot be corrected under this rule, for it would constitute use of the rule as a substitute for an appeal or for a motion for a new trial.")). Furthermore, "[a] judgment is not void merely because it is erroneous." Allstate Ins. Co. v. Lombardi, 773 A.2d 864, 869
(R.I. 2001) (citing Jackson, 734 A.2d at 506 (quoting 11 Charles A. Wright, et al., Federal Practice and Procedure § 2862 at 326 (1995))). "A party may not avail itself of the grounds set forth in Rule 60(b)(4) to vacate a judgment on the basis of mere errors of law committed by a trial justice, unless the court entering judgment `lacked jurisdiction or in circumstances in which the court's action amounts to a plain usurpation of power constituting a violation of due process.'" Id. (quoting Houltv. Hoult, 57 F.3d 1, 6 (1st Cir. 1995)).
Additionally, although Rule 60(b)(6) vests the Superior Court with broad power to vacate judgments when appropriate, "[t]he discretion therein . . . is not without limitations and the clause is not intended to constitute a catchall." The BendixCorp. v. Norberg, 122 R.I. 155, 158, 404 A.2d 505, 506 (1979). The circumstances must be "extraordinary" to justify relief under Rule 60(b)(6). Id. (citing 1 Kent, R.I. Civ. Prac. § 60.08 at 456 (1969)).
Accordingly, this Court denies the plaintiff's motion to vacate. The plaintiff's arguments that this Court committed errors of law in rendering its previous decision are not grounds for a motion to vacate under Rule 60(b). Moreover, the inadequate remedy issue raised by Industrial does not amount to an extraordinary circumstance meriting the vacation of this Court's judgment, under Rule 60(b)(6), in the underlying matter. SeeMorris v. Travisono, 499 F. Supp. 149, 157 (D.R.I. 1980) (a judgment cannot be reopened pursuant to Rule 60(b)(6) absent a grievous wrong or injustice). Ultimately, had the time for filing an appeal not expired, the issues raised in the plaintiff's motion would have been more appropriately directed towards our Supreme Court. The parties shall submit the appropriate judgment for entry.
[1] By stipulation of the parties, CNA was substituted for National Fire Insurance Company as party defendant.
[2] The lowest bid received to perform the wetland remediation was $15,310.70. This work has not yet commenced, and the DEM has not taken any further action.